IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JUDIBELLE MELÉNDEZ ALCARAZ,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CIVIL NO.: 22-1048 (MEL)

**OPINION AND ORDER**

**I.    PROCEDURAL AND FACTUAL BACKGROUND**

Pending before the court is Mrs. Judibelle Meléndez Alcaraz ("Plaintiff") appeal from the

decision of the Commissioner of Social Security (the "Commissioner") denying her application

for disability benefits under the Social Security Act. ECF No. 3. On August 1, 2018, Plaintiff

filed an application for Social Security benefits, alleging that she initially became unable to work

due to disability on March 1, 2013 (the "onset date"). Tr. 21. Prior to the onset date, Plaintiff's

past relevant work was as a claims adjustor, accounting clerk, and customer service supervisor.

Tr. 31. Plaintiff met the insured status requirements of the Social Security Act through December

31, 2018. Tr. 24. Plaintiff's disability claim was denied initially on February 8, 2019, and upon

subsequent reconsideration on July 12, 2019. Tr. 21.

Thereafter, Plaintiff requested a hearing which was held on October 28, 2020, before an

Administrative Law Judge (the "ALJ").[1] Tr. 21. On January 22, 2021, the ALJ issued a written

decision finding that Plaintiff was not disabled. Tr. 33. Thereafter, Plaintiff requested review of

---

[1] The ALJ held a telephone hearing "due to the extraordinary circumstance presented by the Coronavirus Disease 2019 (COVID-19) Pandemic." Tr. 21.

the ALJ's decision. *See* Tr. 860–62. The Appeals Council denied Plaintiff's request for review,

rendering the ALJ's decision the final decision of the Commissioner, subject to judicial review.

Tr. 1. Plaintiff sought judicial review on January 26, 2022. ECF No. 3. Both parties have filed

supporting memoranda. ECF Nos. 17, 23.

## II.      LEGAL STANDARD

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for

disability benefits, a district court "shall have power to enter, upon the pleadings and transcript

of the record, a judgment affirming, modifying, or reversing [that decision], with or without

remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to

determining whether the ALJ employed the proper legal standards and whether her factual

findings were founded upon sufficient evidence. Specifically, the court "must examine the record

and uphold a final decision of the Commissioner denying benefits, unless the decision is based

on a faulty legal thesis or factual error." *López-Vargas v. Comm'r of Soc. Sec.*, 518 F. Supp. 2d

333, 335 (D.P.R. 2007) (citing *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15,

16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by

substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere

scintilla of evidence but may be somewhat less than a preponderance' of the evidence."

*Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting *Laws v. Celebrezze*, 368

F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing *Da Rosa v. Sec'y of Health & Human Servs.*, 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); *Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. *See Ortiz*, 955 F.2d at 769 (citing *Rodríguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." *Id*. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán v. Sec'y of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

**B. Disability under the Social Security Act**

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that she is disabled within the meaning of the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; *Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003); *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 804 (1999); *Yuckert*, 482 U.S. at 140–42. If it is conclusively

3

determined that plaintiff is or is not disabled at any step in the evaluation process, then the

analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). However, if the ALJ

cannot conclusively determine whether a plaintiff is or is not disabled at a given step, then the

analysis will proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined

whether plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R.

§ 404.1520(a)(4)(i). If she is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step

two requires the ALJ to determine whether plaintiff has "a severe medically determinable

physical or mental impairment" or severe combination of impairments. 20 C.F.R.

§ 404.1520(a)(4)(ii). If she does, then the ALJ determines at step three whether plaintiff's

impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404,

Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then plaintiff is conclusively found

to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether

plaintiff's impairment or impairments prevent her from doing the type of work she has done in

the past. 20 C.F.R. § 404.1520(a)(4)(iv).

In assessing an individual's impairments, the ALJ considers all the relevant evidence in

the case record to determine the most the individual can do in a work setting despite the

limitations imposed by her mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This

finding is known as the individual's residual functioning capacity ("RFC"). *Id*. If the ALJ

concludes that plaintiff's impairment or impairments do prevent her from performing her past

relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether

plaintiff's RFC, combined with her age, education, and work experience, allows her to perform

any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the

ALJ determines that there is work in the national economy that plaintiff can perform, then

disability benefits are denied. 20 C.F.R. § 404.1520(g).

### III.   THE ALJ'S DECISION

In the ALJ's decision dated January 22, 2021, the ALJ found that Plaintiff had met the

insured status requirements of the Social Security Act through December 31, 2018, the date last

insured. Tr. 24, 33. At step one of the sequential analysis, the ALJ found that Plaintiff had not

engaged in substantial gainful activity from the onset date of March 1, 2013, through the date last

insured. Tr. 24. At step two, the ALJ determined that Plaintiff had the following severe

impairments: "multiple sclerosis, degenerative disc disease, and depression." Tr. 24. At step

three, the ALJ found that Plaintiff did not have an impairment or combination of impairments

that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404,

Subpart P, Appendix 1. Tr. 24. Next, the ALJ determined that during the relevant period:

> [Plaintiff] had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, but could not climb ladders or scaffolds. She could frequently handle, finger, and feel. [Plaintiff] needed to avoid concentrated exposure to extreme cold and heat and vibration. She could not work with hazardous machines or external moving mechanical parts, or in high exposed places, or drive commercial vehicles. [Plaintiff] was able to perform simple routine and repetitive tasks; able to understand, remember and carry out simple instructions; able to adapt to routine changes in the work setting; could make decisions on simple matters; could concentrate and persist for two[-]hour segments; and occasionally interact with the public.

Tr. 26. At step four, the ALJ determined that during the relevant period, Plaintiff was not capable

of performing her past relevant work as a claims adjuster, accounting clerk, or customer service

supervisor. Tr. 31. At step five, the ALJ presented Plaintiff's RFC limitations, as well as her age,

education, and work experience to a vocational expert ("VE"). Tr. 32. The VE testified that a

hypothetical individual with a similar RFC would be able to perform the following representative

occupations: addresser, lens inserter, or fishing reel assembler. Tr. 32. Because there was work in the national economy that Plaintiff could perform, the ALJ concluded that she was not disabled. Tr. 32–33.

## IV.   LEGAL ANALYSIS

Plaintiff argues that the ALJ erred at determining her RFC, specifically regarding Plaintiff's manipulative limitations, mental limitations, and ability to perform sedentary work. ECF No. 17 at 13–16. The Commissioner opposes, asserting that the ALJ's decision was supported by substantial evidence and should therefore be affirmed. ECF No. 11 at 5.

### A.   The ALJ's determination regarding Plaintiff's manipulative limitations were based on substantial evidence.

Plaintiff contends that the ALJ erred in assessing that Plaintiff "could frequently handle, finger and feel" because no medical opinion in the record supported that same conclusion. ECF No. 17 at 14; Tr. 26. At first glance, Plaintiff's argument implies that no consulting physician conducted an RFC analysis concerning Plaintiff's manipulative limitations and that this determination "was the product of the lay opinion of the ALJ." ECF No. 17. However, Plaintiff's manipulative limitations were assessed by consulting physician Dr. Rafael Queipo ("Dr. Queipo"), who determined that Plaintiff had no manipulative limitations. Tr. 29, 773. Furthermore, the ALJ's determination to differ to some degree from Dr. Queipo's finding of "no manipulative limitations" was based on substantial evidence because prior physical examinations showed that Plaintiff had brief reductions in upper extremity strength. Tr. 29. While the ALJ's assigned manipulative limitation was not identical to that of Dr. Queipo, it was a more restrictive determination that ultimately benefited Plaintiff, which is not error entitled to remand. *See Lozada-Lebron v. Kijakazi*, No. CV 21-1511, 2022 WL 17335668, at *6 (D.P.R. Nov. 29, 2022)

("[T]he Court must note that the ALJ gave Plaintiff a more restrictive RFC at all times and mentioned that it was more beneficial to Plaintiff. . . . Thus, the Court finds no error in the ALJ's RFC determination."); *Rivera-Quiles v. Comm'r of Soc. Sec.*, No. CV 19-2120, 2022 WL 611293, *18 (D.P.R. Mar. 1, 2022) (finding no error where "the ALJ made a more restrictive RFC determination than that offered by any medical source based on the medical evidence on record and Rivera's subjective symptoms.")

Plaintiff also asserts that her manipulative limitations should be greater than those assigned by the ALJ. This argument cannot prosper because Plaintiff fails to cite to the record to support this conclusion. By contrast, in making her RFC determination to determine Plaintiff's manipulative limitations, the ALJ relied on several neurology reports from examining neurologist Dr. Ángel R. Chinea Martínez ("Dr. Chinea") dated August 6, 2015, December 7, 2016, and December 6, 2018, noting that Plaintiff had full strength in her upper extremities and/or intact deep tendon reflexes of her upper extremities.[2] Tr. 27–28, 1494, 1510, 1518. Moreover, to the extent that Plaintiff's multiple sclerosis could warrant further manipulative limitations, the ALJ noted that Plaintiff's physical examinations showed that her multiple sclerosis was stable due to her medication regiment. Tr. 27, 29, 1286.

While reports showed and the ALJ acknowledged Plaintiff's complaints of pain and sensation in her hands and that she experienced a brief reduction in upper extremity strength in September 2018, the ALJ reasonably weighed this evidence to determine that Plaintiff's RFC should have certain manipulative limitations despite Dr. Queipo's recommendation that no manipulative limitations were warranted. Additionally, considering the substantial evidence above noting full upper extremity strength on several occasions, it was also reasonable that the

---

[2] In her decision, the ALJ notes that the August 2015 visit occurred on August 16, 2015; however, the report is dated August 6, 2015. *Compare* Tr. 27 (ALJ's decision), *with* Tr. 1517 (August 6, 2015, neurology report).

ALJ did not determine that Plaintiff's RFC required greater manipulative limitations. Thus, the

court finds no error in the ALJ's determination as to Plaintiff's manipulative limitations.

**B. Plaintiff has failed to show that the ALJ erroneously assessed Plaintiff's mental**

**limitations.**

Plaintiff next contends that the ALJ erroneously determined her mental limitations

because they are not supported by medical opinion evidence. ECF No. 17 at 14–15. Plaintiff

points to clinical psychologist Widaliz Caro's ("Psychologist Caro") mental assessment and the

ALJ's RFC, arguing that the ALJ's mental RFC determination does not align with Psychologist

Caro's opinion:

> As previously stated, [Psychologist] Caro opined that the Plaintiff's mental limitations are:
> > 1. Understand, remember, and follow instructions limited to simple rutinary tasks.
> > 2. Use of judgment limited to simple decision related with work.
> > 3. Manage change in the work environment limited to simple decision related to work.
> > 4. No limitation in the social area.
>
> The ALJ, without any medical opinion to support her self-made limitations in the RFC established that the Plaintiff could:
> > 1. . . . [P]erform simple routine and repetitive tasks
> > 2. Understand, remember, and carry out simple instructions.
> > 3. . . . [A]dapt to routine changes in the work setting.
> > 4. Make decisions on simple matters.
> > 5. Concentrate and persist for two-hour segments[.]
> > 6. Occasionally interact with the public.

ECF No. 17 at 14–15; *see also* Tr. 26, 1690.

Although Plaintiff candidly notes that some of the assessments above "are very similar,"

she asserts that the ALJ's limitation concerning Plaintiff's ability to interact with the public is

not based on any medical opinion. ECF No. 17 at 15. This argument suggests that the ALJ is

limited to making her RFC determination based on one medical opinion and that the RFC must

explicitly mirror said medical opinion. However, that is not the case: the ALJ need not adopt any single physician's opinion in making an RFC determination and may "piece together the relevant medical facts from the findings and opinions of multiple physicians." *Evangelista v. Sec'y of Health & Hum. Servs.*, 826 F.2d 136, 144 (1st Cir. 1987) ("The basic idea which the claimant hawks—the notion that there must always be some super-evaluator, a single physician who gives the factfinder an overview of the entire case—is unsupported by the statutory scheme, or by the caselaw, or by common sense, for that matter."). Here, the ALJ noted that occasional interaction with the public limitation was made in abundance of caution because of Plaintiff's mental status examinations and a neuropsychological evaluation showing, at times, impaired concentration and mood. Tr. 30, 1652–63. Therefore, the ALJ's metal limitation regarding public interaction was reasonable and based on substantial evidence.[3]

Plaintiff presents two more "inconsistencies" between Psychologist Caro's report and the ALJ's RFC: first that Psychologist Caro opines about Plaintiff's judgment and the ALJ does not and second that Psychologist Caro does not opine about the concept of adaption while the ALJ does. These minute differences do not constitute reversible error because both assessments— while not using the same explicit wording—are consistent with one another, and Plaintiff fails to provide any reason to conclude otherwise.

First, regarding Plaintiff's judgment, Psychologist Caro's opined that Plaintiff's "[u]se of judgment [is] limited to simple decision[s] related to work." ECF No. 17 at 15; Tr. 1690. The ALJ similarly noted in her RFC determination that Plaintiff can perform simple routine and repetitive tasks and understand, remember, and carry out simple instructions. While the ALJ's

---

[3] Regardless, the ALJ's public interaction limitation was more restrictive than that of the opinion of Psychologist Caro, who determined that Plaintiff had no limitations in interacting with the public, and as explained above, is not a basis for harmful error because if anything that determination was beneficial to Plaintiff.

RFC determination does not use the word "judgment," it could be reasonably inferred that the ALJ's determination encompasses Psychologist Caro's opinion regarding judgment because if someone is limited to performing simple tasks and understanding simple instructions, it follows that their judgment is limited to simple decisions as well.

Second, regarding the concept of adaption, the ALJ noted that Plaintiff was "able to adapt to routine changes in the work setting." Tr. 26. While Plaintiff correctly notes that Psychologist Caro did not use the word "adapt," Psychologist Caro did similarly state that Plaintiff could "[m]anage change in the work environment limited to simple decision[s] related to work." Tr. 13, 1690. Again, the wording of each assessment is not explicitly the same; however, the essence of each limitation is effectively the same, and Plaintiff fails to explain how the slight differences in wording is basis for reversible error. Therefore, the ALJ did not err in assessing Plaintiff's mental RFC determinations.

### C.  The ALJ did not err in concluding that Plaintiff could perform sedentary work.

Plaintiff finally argues that the ALJ erroneously concluded that Plaintiff could perform sedentary work because no medical opinion supports this conclusion. ECF No. 13–14. In doing so, Plaintiff points to Dr. Queipo's opinion where he determined that Plaintiff could perform light work. ECF No. 13–14. A determination that a plaintiff can conduct sedentary work is more restrictive than a determination that they can conduct light work. *Compare* C.F.R. § 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds at a time . . ."), *with* C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."). The problem with Plaintiff's argument, as explained above, is that the ALJ's determination of sedentary work, compared to Dr. Queipo's evaluation of light work, benefited Plaintiff. Therefore, even if the court were to determine that

10

the ALJ's sedentary work limitation was not based on substantial evidence, that would not result in reversible error. *See Bowden v. Colvin*, No. 1:13-cv-201, 2014 WL 1664961, at *4 (D. Me. Apr. 25, 2014) ("[T]he long-standing rule of Social Security law in this district that a claimant may not obtain a remand on the basis of an RFC that is more favorable to him or her than the evidence would otherwise support."). Moreover, Plaintiff makes no argument that she should have been entitled to a more restrictive physical exertion limitation nor does she cite to any evidence in the record to support this conclusion. Accordingly, Plaintiff has failed to show that the ALJ erred in determining her RFC, and therefore remand is not appropriate.

## V.    CONCLUSION

Based on the foregoing analysis, the court concludes that the decision of the Commissioner that Plaintiff was not entitled to disability benefits was supported by substantial evidence and contained no legal error. Therefore, the Commissioner's decision is hereby AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 29th day of January, 2024.

s/Marcos E. López
U.S. Magistrate Judge
